## MISSISSIPPI VALLEY MANUFACTURERS MUTUAL INSURANCE COMPANY

v.

## M. BERMOND.

*Fire Insurance—Issue of Policy—Cancellation—Return of Premium Unnecessary, When—Agency.*

In an action brought to recover for a loss under a policy of insurance issued by plaintiff in error to defendant in error, where the defense was that the policy had been canceled, it having appeared that the premium had been paid to an agent, who retained the same in his possession until after the loss occurred, this court holds, that under the evidence presented, such agent was to be considered the agent of the insured, and that therefore no return of premium was necessary to the cancellation of the policy, and that all other necessary steps having been taken to cancel the policy, the insured could not recover.

[Opinion filed May 20, 1892.]

IN ERROR to the Circuit Court of Rock Island County; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. JACKSON & HURST, for plaintiff in error.

Messrs. J. T. KENWORTHY and McENIRY & McENIRY, for defendant in error.

MR. JUSTICE LACEY. This was a suit brought by defend-

ant in error, a resident of New York City, against the plaintiff in error, a corporation located in Rock Island County, Illinois, on a policy of insurance, No. 011,350, issued by the latter. The policy was dated December 30, 1889, and issued to defendant in error for the premium of $12.75 to the amount of $1,500, on stock of materials and supplies in his business as manufacturer of furs and other articles, situate in building No. 95 Mercer street, New York City. The cause was tried by a jury and resulted in a verdict for defendant in error for the sum of $1,085.25. Upon plaintiff in error's motion for a new trial being overruled judgment was rendered on the verdict. The defense is based on the claim that the policy was canceled by plaintiff in error before the fire resulting in the destruction of the goods took place, January 14, 1890. The entire insurance was $27,500, $7,000 of which, including that of plaintiff in error, was obtained in December, 1889, the fire taking place in about ten days after the last insurance was procured. The total loss as finally appraised was fixed at $17,702.41, though at first it was fixed at $23,034.28.

The circumstances of the insurance and the alleged cancellation of the policy of insurance by the plaintiff in error are about as follows: J. W. Fitzgerald and Charles H. Spencer were in the insurance business in New York City from October, 1889, to January 1, 1890, and those two and D. S. Wagner from January 1, 1890, to February 23, 1890, under the name of New York Insurance Agency, doing a brokerage business, 111 Broadway, New York City. During the time of the transactions in question J. M. Lewis was also a licensed insurance agent doing business in the same city. One L. Joseph, being employed by defendant in error, deputed J. M. Lewis to obtain the insurance in question in a regular manner.

Thereupon the agent, Lewis, made written application to Mr. Fitzgerald for insurance for defendant in error in which defendant in error was recommended as a man of high credit and that there was no moral hazard, and that there was current insurance in the "Williamsburg City,"

Orient of Hartford, Broadway, American of Boston, Mercantile of Boston, German of Pennsylvania, People's of Connecticut, Washington of Cincinnati and "German American," all of which was false except as to the People's of Connecticut and the Washington of Cincinnati. It appears also that defendant in error was of that class who could not obtain insurance in the New York companies.

Upon this application Fitzgerald, in behalf of plaintiff in error, issued the policy in question and delivered it to Lewis, who delivered it to Joseph, who delivered it to the defendant in error, who gave to Joseph a check for the premium drawn payable to the plaintiff in error. Joseph then delivered the same to Lewis to be delivered to plaintiff in error. Lewis, without any authority from the plaintiff in error or its agent in New York, indorsed its name on it and drew the money on the check, but failed to pay it over till after the fire, when he tendered it to Fitzgerald's agency, which was refused. On the 4th of January the Fitzgerald insurance agency, having been promptly wired by plaintiff in error to refuse and cancel the risk, at once notified by postal card J. M. Lewis' agency that plaintiff in error ordered the insurance canceled, and to return the policy; and the evidence shows that Lewis' books showed that this was prior to the time Joseph left the check with Lewis. Several times before the fire the clerks of Fitzgerald's agency notified Lewis' agency to return the policy and inquired why it had not been done, being told that defendant in error or Joseph had been notified. And thus the matter rested till after the fire. Undoubtedly Lewis was defendant in error's agent to pay the premium and to hand over the check on behalf of the defendant in error which was drawn to plaintiff in error. By a provision in the policy the insurance was not to be held complete till the premium was paid; and as Lewis still had the premium, therefore the insurance at Lewis' agency was not complete. Therefore notice to Lewis of the refusal of plaintiff in error to accept the insurance would be good, and no other notice need be given to defendant in error of the cancellation of the policy. No premium having been

received it was not necessary to return any. It is claimed that by a system of exchange between Lewis and Fitzgerald accounts should run and be settled every month. Even if this were true we are not inclined to hold that plaintiff in error would be bound by such an arrangement in the absence of notice of it. And besides, the evidence fails to show that during that time till after the fire Fitzgerald was indebted to Lewis on account; on the contrary, Lewis, as shown by his check given after the fire to Fitzgerald for over $200, was indebted to the latter. Newark Fire Ins. Co. v. Sammons, 11 Ill. App. 236.

Fitzgerald was plaintiff in error's agent to deliver the policy, and Lewis was defendant in error's agent to pay the premium, and the fact that the policy was delivered without the payment of the premium did not terminate Lewis' agency on behalf of his principal to pay the money. Lewis was not made an agent for plaintiff in error; Lewis was looked to as defendant in error's agent to see that the premium was paid. It is insisted, however, that the policy of insurance acknowledges the receipt of the premium, and under the authority of Ill. Cen. Ins. Co. v. Wolf, 37 Ill. 354, Provident Life Ins. Co. v. Fennel, 49 Ill. 180, and Teutonia Life Ins. Co. v. Anderson, 77 Ill. 384, the payment of the premium will be conclusively presumed, and therefore the premium under the policy must be returned before cancellation can take effect.

These authorities, we think, do not apply; first, for the reason that the policy sued on does not in terms acknowledge the receipt of the premium; second, the class of cases governed by the principle announced are different from the case at bar. There the suits were brought where no cancellation had been attempted, but where the insurer had kept quiet and neither attempted to cancel the policy or collect the premium. Under such circumstances public policy and equity would require that the insurance company should not be allowed to dispute payment in order to avoid the policy. But clearly it would not estop the insurance company from suing and collecting an unpaid premium

even though payment were acknowledged in the policy; nor in case of cancellation by the insurer would it be required to tender back a premium never in fact paid, even though receipted for. The general rule applicable to the proof of the consideration by parol different from what is contained in the written instrument would apply, and so in regard to contradicting written receipts.

We think that the court below erred in refusing the following instruction offered by plaintiff in error, viz.:

"The court further instructs the jury that if they believe from the evidence that Lewis was the agent of the plaintiff, Bermond, to procure the insurance from defendant; that as such agent he procured the policy in evidence; that by arrangement with defendant's agent Fitzgerald, and to perfect the insurance, the premium was to be paid upon receipt of the policy by plaintiff; in that case the business of Lewis in procuring the insurance for Bermond was not complete until the premium was paid or waived, and until it was so paid or waived, defendant had a right to demand of Lewis, as agent for plaintiff, a return of the policy for cancellation, and such demand on Lewis would in law be a demand on plaintiff." This was correct, as will be seen from what we have already said in regard to Lewis' agency for defendant in error.

From the entire evidence there seems to be an air of suspicion resting about the entire case. The over insurance, the fire following so soon after the last $7,000 of over insurance was secured, the false statements made in the application, and the unaccounted-for manner in which the fire was communicated, and the fact that defendant in error could get no insurance in New York companies, and other facts, stamps the transaction as calling for a strict investigation, and also discrediting to some extent the evidence of Lewis, defendant in error's agent, who has acted for plaintiff in error in this questionable transaction. The judgment of the court below is therefore reversed and the cause remanded.

*Reversed and remanded.*